# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. _____

| | | |
|---|---|---|
| ALEXANDER CHASE CONDOMINIUM ASSOCIATION, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) | **(JURY TRIAL DEMANDED)** |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**NOW COMES** Plaintiff Alexander Chase Condominium Association, Inc. ("Plaintiff" or "Alexander Chase"), by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1.      Plaintiff is a North Carolina nonprofit homeowners' association. At all times relevant to this Complaint, Plaintiff had a complex comprised of nineteen (19) multi-family buildings, twenty-five (25) detached garages, a pool house building, a clubhouse building, and a pergola structure located in Cornelius, North Carolina (hereinafter, the "Property").

2.      Defendant Philadelphia Indemnity Insurance Company ("Defendant" or "Defendant PIIC") is a company existing under the laws of the State of Pennsylvania, with its principal place of business in Bala Cynwyd, Pennsylvania. At all times relevant to this Complaint, Defendant PIIC was transacting substantial business in North Carolina.

## JURISDICTION & VENUE

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.    The Defendant is subject to personal jurisdiction in this District.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim and questions surrounding coverage under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

6.    On or about February 13, 2019, Plaintiff submitted a hail claim to Defendant PIIC (claim #1249847) for apparent hail damage to the Property's buildings.

7.    In connection with the hail claim, Defendant PIIC retained Engle Martin & Associates ("Eagle Martin"), an independent adjustment company, to assist with the investigation and adjustment of the claim. Defendant PIIC and Eagle Martin hired Envista Engineering ("Envista"), an engineering firm, and J.S. Held LLC ("J.S. Held"), a building consulting firm, to conduct an inspection of the Property, assess the scope and cause thereof, and prepare an estimate.

8.    The Property was inspected in connection with the hail claim on March 11, 12, and 13, 2019. During the inspection, Envista and J.S. Held concluded that the buildings' roofs sustained damage from wind in a different storm. According to them, shingles on buildings throughout the Property were damaged as a result of winds in a prior storm event.

9.    Thereafter, given the damage to the Property's roofs from winds by another storm, Defendant PIIC directed Plaintiff to submit a new claim for wind damage with an August 8, 2018 date of loss – a date on which a severe weather system, producing winds of over 60 miles per hour,

struck the Property. Defendant PIIC told Plaintiff that this was the correct date of loss, and that based upon its own research, this was the storm that caused damage to the Property.[1]

10.     On or around July 18, 2019, a new claim was opened for wind damage sustained to the Property with a date of loss of August 8, 2018, which was assigned claim #1283903 (the "Claim").

11.     At all times relevant to this Complaint, the Property was insured by Defendant PIIC under a Commercial Lines Policy, Policy No. PHPK1829149 (hereinafter the "Policy") (**Exhibit A**).

12.     The Policy provides coverage for "direct physical 'loss' to Covered Property caused by or resulting from any of the Covered Causes of Loss." **Exhibit A**, Property Coverage From (PI-ULT 11.98) at p. 1. Pursuant to the Policy, the value of the loss was determined "[a]t replacement cost (without deduction for depreciation) as of the time of 'loss[.]'" *Id.* at p. 18.

13.     All buildings located at the Property are defined in the Policy as Covered Property.

14.     Wind damage to the Property and its roofs is a Covered Causes of Loss under the Policy, in addition to any ensuing losses therefrom.

15.     Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect on August 8, 2018.

16.     On October 21, 2019, Defendant PIIC shared with Plaintiff J.S. Held's wind damage estimate and the Statement of Loss that summarized Defendant PIIC's position on adjustment of the Claim. *See* Insurer's Letter dated October 21, 2019 with enclosures (**Exhibit B**). Specifically, Defendant PIIC opined that the damaged shingles throughout the Property were

---

[1] After consultation with experts, Plaintiff agrees that August 8, 2018 is the correct date of loss for the damage that is the subject of this lawsuit.

**repairable**. J.S. Held prepared an estimate based off the inspection that occurred in March of 2019 and Defendant PIIC's position that the roofs were repairable.

17.     The J.S. Held estimate forecasted a total replacement cost of $91,460.79 for the damage to the Property, and $76,791.31 of that total was attributable to damage to the roofs.

18.     In the following months, Plaintiff contracted with Signature Exteriors for repairs to the Property's roofs from the August 8, 2018 storm. Signature Exteriors attempted repairs, but those efforts were unsuccessful; the repairs generated cracks, creases, tears, etc. in surrounding shingles and were causing the roofs to be more vulnerable to future wind-related damage. It was determined that spot repairs were not possible.

19.     Upon hearing of the issue with repairability, Plaintiff, at its own expense, hired John Worden ("Mr. Worden") of JW Services of NC, Inc. for purposes of inspecting the site and making a determination as to repairability. Mr. Worden conducted a thorough inspection of the loss location on April 22, 2020. He too concluded that the "**appropriate repair would be to replace the entirety**" of the roof for each of the Property's effected buildings. *See* Insured's Letter dated February 3, 2021 (**Exhibit C**) at Enclosure 2 for the JW Services Report.

20.     The JW Services Report was Provided to Defendant PIIC, and it was, in turn, provided to Envista and J.S. Held for further consideration.

21.     Thereafter, on October 2, 2020, a reinspection of the Property by Envista occurred, which provided Defendant PIIC, the opportunity to reevaluate repairability of the Property's roofs.

22.     On December 17, 2020, Plaintiff received Envista's Supplemental Report dated October 26, 2020. *See* **Exhibit C** at Enclosure 3 for the Envista Supplemental Report. Envista concluded: (1) that the existing damage to the roofs was caused by wind damage, (2) that the shingles on all of the buildings' roofs were non-repairable, and (3) that total roof replacements

were necessary to return the complex to its pre-loss condition. Meaning, Envista agreed with M. Worden and the conclusions outlined in the JW Service Report.

23.     Despite being aware of the findings of Envista's second inspection since October of 2020, Defendant PIIC did nothing to adjust or pay the Claim for over five months. It did not commission estimates for total roof replacements at the complex, perform any further site inspections, pay anything upon the Claim, send Plaintiff letters explaining its positions or reasons for non-payment, nor do anything else whatsoever to adjust or pay the Claim. Defendant PIIC took no action at all and went completely silent.

24.     Due to Defendant PIIC's inaction, Plaintiff, at its own expense, obtained a complete estimate for total roof replacements from its contractor, Signature Exteriors. Signature Exteriors completed a Xactimate estimate. The current cost to replace is $1,995,899.05.

25.     On February 3, 2021, at its own expense and efforts, Plaintiff prepared a Sworn Statement in Proof of Loss ("Sworn Proof of Loss"), showing that the replacement cost value of the Claim was **$2,002,480.80**. This amount includes the itemized estimate for the materials and services that are necessary to replace the roofs from damages caused by wind, including among other things debris removal and permit fees, as well as the costs for the temporary repairs Plaintiff has made since August of 2018. *See* **Exhibit C**.

26.     Plaintiff submitted the Sworn Proof of Loss and supporting documentation to Defendant PIIC that same day. *See* **Exhibit C**.

27.     On February 18, 2021, Defendant PIIC responded to Plaintiff's February 3, 2021 correspondence and the Sworn Proof of Loss, rejecting the same. In connection with this letter, Defendant PIIC attempted to suggest that the appropriate replacement cost value (RCV) for the

Claim is $287,348.60. This amount is based upon an alleged "Revised Estimate" created by J.S. Held.

28.     Despite continued efforts on Plaintiff's part to communicate with Defendant PIIC regarding its denial of payment for the full value of the Claim (as outlined in the Sworn Proof of Loss) and the continued adjustment of the Claim, Defendant PIIC has not offered an explanation as to why J.S. Held produced a revised estimate on February 18, 2021, although J.S. Held was last at the loss location on March 12, 2019 – before Mr. Worden and Envista opined that total roof replacements were necessary – nor has it provided any explanation as to why Defendant PIIC went silent for more than five months after receiving an adverse opinion from its own engineer (Envista) in October of 2020 as to the roofs' repairability.

29.     This notwithstanding, Plaintiff agreed to a second joint site inspection, at Defendant PIIC's request, to allow Plaintiff's and Defendant PIIC's engineers to once again evaluate the damage. In preparation for this meeting, Plaintiff, at its own expense, commissioned a second opinion (in addition to Mr. Worden's) from J. Redmond Engineering to ensure that the site inspection was productive.

30.     J. Redmond Engineering conducted a site inspection on March 19, 20, and 21, 2021 and authored a report, detailing its findings. The report concludes that "**roof replacement is required for all of the buildings in the complex, including the clubhouse and garages**." This report was shared with Defendant PIIC on June 4, 2021. *See* Insured's Letter dated June 4, 2021 and enclosure thereto (**Exhibit D**).  In the cover letter, Plaintiff asked for Defendant PIIC to provide several possible dates in June for the reinspection to occur, in light of the looming statute of limitations.

31.     To date, Defendant PIIC has not responded or otherwise engaged in further discussions concerning the adjustment of the Claim, and Defendant PIIC has again gone silent.

32.     Defendant PIIC has failed to make proper payment of the Claim or to do anything further to adjust the Claim. Instead, Defendant has compelled the insured, the Plaintiff, to file the instant litigation.

33.     Without payment of the Claim, and as a result of Defendant PIIC's delay tactics and repeated, and unreasonable denials, Plaintiff incurred, and will continue to incur, significant expenses in mitigating its damages, attorney's fees, litigation costs, and other expenses and damages.

34.     At all times, Plaintiff made itself and the Property available to Defendant PIIC, its agents, and its representatives and fully cooperated with Defendant PIIC, its agents, and its representatives to inspect and investigate the damage caused by storm-related winds.

35.     Defendant PIIC has failed to provide a reasonable basis for its failure to pay the amounts set forth in Plaintiff's Sworn Proof of Loss or for its protracted investigation and unreasonable positions taken in the adjustment of Plaintiff's Claim.

36.     At all times throughout the investigation of the Claim, Plaintiff complied as promptly as possible with every request made by Defendant PIIC for information regarding the Claim and has otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

37.     Following the wind damage, Plaintiff was forced to repair, and will be forced to replace, the roofing systems on all buildings in the complex due to the massive amounts of wind damage to each building's roof. Plaintiff has done everything in its power to mitigate its damages and to prevent further damages as a result of the Property's compromised roofs.

38.     Plaintiff repeatedly provided all information and documentation relevant to Plaintiff's contention that full roof repairs are necessary and covered under the Policy. Such information was not provided reasonable consideration by Defendant PIIC. As such, Plaintiff continued to expend time, energy, and resources to provide estimates, expert reports, and further information in support of the Claim. However, in reality, Defendant PIIC had no interest in reviewing new facts or information and did not in fact consider any additional documents or information provided by Plaintiff or its own expert.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

39.     Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

40.     The Policy constitutes a contract between Plaintiff and Defendant.

41.     Defendant breached the Policy and purposefully attempted to deny Plaintiff its benefits under the Policy in that it:

    a.   Purposefully and repeatedly adhered to a baseless position as to the value of and coverage for the Claim, specifically regarding reparability of the roofs, despite overwhelming evidence that replacement was the only viable option and that the Claim was covered and worth over $2,000,000.00;

    b.   Repeatedly refused to adjust their low valuation of the Claim, despite overwhelming contradictory evidence that the Claim was worth significantly more;

    c.   Acted intentionally in delaying the adjustment of Plaintiff's Claim, in taking unreasonable positions as to the value of the Claim, and in purposefully

providing little to no explanation for refusing to adjust the Claim, all to deny Plaintiff its benefits under the Policy;

d.  Repeatedly invited Plaintiff to submit further evidence as to the value of the Claim, at its own expense, only to refuse to review such evidence or incorporate it into the adjustment of the Claim;

e.  Repeatedly and baselessly alleged that the reports, estimates and other evidence from Plaintiff's experts and its own expert had no substantive impact on the value of the Claim without any explanation or reasoning as to why they had no substantive impact;

f.  Purposefully engaged in various delay tactics intended to frustrate Plaintiff's efforts to resolve the Claim, all in an attempt to pressure Plaintiff into foregoing seeking payment on the Loss, to deny Plaintiff its benefits under the Policy, and to force Plaintiff to initiate this litigation to recover the amounts owed under the Policy;

g.  Generally, refused to pay the Claim when it was due under the Policy; and

h.  Otherwise breached the terms of the Policy, as Plaintiff will demonstrate at trial.

42.    As a direct and proximate result of Defendant's breach of the Policy, Plaintiff has been damaged in an amount in excess of this Court's jurisdictional threshold of $25,000, and Plaintiff is further entitled to consequential and contractual damages as proven through discovery and trial.

43.    Plaintiff is entitled to prejudgment interest at the legal rate of 8%.

**SECOND CLAIM FOR RELIEF**
**Breach of the Covenant of Good Faith and Fair Dealing**

44.     Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

45.     Defendant's conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

46.     Defendant's conduct, actions, omissions and refusals to timely and promptly adjust and pay the entire Claim constitutes bad faith. A nonexclusive list of Defendant's bad faith includes:

a.  Misrepresenting pertinent facts relating to coverage at issue, particularly regarding the extent of damage to and repairability of the Property's roofs and the value of and coverage for the Claim;

b.  Failing to acknowledge and act reasonably promptly upon communications with respect to the Claim;

c.  Purposefully and repeatedly adhering to a baseless position as to the value of and coverage for the Claim, specifically regarding reparability of the roofs, despite overwhelming evidence that replacement was the only viable option and that the Claim was covered and worth over $2,000,000.00;

d.  Failing to acknowledge and act reasonably promptly upon evidence from Defendant's own expert concerning reparability;

e.  Repeatedly inviting and requesting Plaintiff to spend its time and money gathering more estimates, reports, and other evidence of the true value of the Claim, only to completely ignore such evidence and continue to deny the Claim;

f.  Refusing to provide reasonably prompt and clear communications as to why Plaintiff's estimates, reports, and evidence did not support a higher valuation of the Claim or coverage for the Claim;

g.  Failing to conduct a reasonable investigation of the Claim;

h.  Purposefully engaging in numerous delay tactics in order to pressure Plaintiff to forego pursuing full payment of the Claim and eventually forcing Plaintiff to initiate this lawsuit in order to recover the amount that is owed on the Claim;

i.  Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim, despite liability under the Policy being reasonably clear;

j.  Misusing its power and authority in such a way to be tantamount to outrageous conduct; and

k.  As will otherwise be shown through discovery and trial.

47.  As a proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has been damaged in an amount in excess of this Court's jurisdictional threshold of $25,000. Additionally, Plaintiff is entitled to recover punitive damages from Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## THIRD CLAIM FOR RELIEF
**Unfair Claims Settlement Practices
And Unfair & Deceptive Trade Practices**

48.  Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

49.  Upon information and belief, the conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11), and

Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

 a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

 b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

 c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

 d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

 e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

 f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

 g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount actually due to such insured;

 h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

 i. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

j.   Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim in which liability had become reasonably clear based on the estimates, reports, and other evidence provided by Plaintiff at the request and invitation of the Defendant;

k.   Intentionally refusing to review or consider the significant amount of evidence regarding the extent of damage to the Property and the value of the Claim provided by Plaintiff or to incorporate such evidence into its adjustment of the Claim, despite repeatedly and expressly informing Plaintiff that it would do so;

l.   Ignoring the Sworn Proof of Loss Statement provided by the Plaintiff and the expert reports and detailed repair estimates provided contemporaneous and subsequent thereto;

m.  Failing to provide any explanation or communication to Plaintiff regarding why the evidence provided by Plaintiff and its own expert was insufficient to alter Defendant's denial of Plaintiff's Claim, despite the fact that such evidence overwhelmingly showed that the Property's roofs must be replaced rather than repaired and that such replacement was covered by the Policy;

n.   Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies, including the Claim, and for resolution of those claims under its policies, including the Policy;

o.   Purposely refusing to abide by its own standards for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

p.   Refusing to consider, review, incorporate, or respond to the evidence provided by Plaintiff in good faith, and otherwise delaying payment of the Claim;  and

q.   Other particulars as will be adduced through further investigation, discovery, or at trial.

50.     More particularly, with Defendant's actual and/or constructive knowledge of Plaintiff's damages and coverage therefore, Defendant unfairly and unlawfully failed to promptly investigate, adjust and pay the Claim in violation of North Carolina law, N.C.G.S. § 58-63, and Chapter 75 of the North Carolina General Statutes. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

51.     Defendant's above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

52.     The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiff and was an inequitable assertion of its power and position over Plaintiff under the circumstances.

53.     The above-described conduct of the Defendant was not based upon honest disagreement or innocent mistake.

54.     The above-described conduct of Defendant was committed intentionally, willfully, and with malice toward Plaintiff.

55.     Defendant's actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Plaintiff's rights.

56.     Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

57. As a proximate result of Defendant's unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

58. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

59. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

60. Plaintiff's damages are not presently fully capable of admeasurement, but in any event far exceed this Court's jurisdictional threshold of $25,000.

**WHEREFORE**, Plaintiff prays that the Court enter Judgment as follows:

1. That Plaintiff have and recover of Defendant a sum equal to the amount of $2,002,480.80, the amount provided for in Plaintiff's Sworn Proof of Loss and equal to the benefits due under the Policy, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiff be awarded treble its damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendant;

5. That all issues of fact be tried by a jury; and

6. That Plaintiff have such other and further relief as the Court may deem just and proper.

This the 1st day of July, 2021.

**HOWARD, STALLINGS, FROM,**
**ATKINS, ANGELL & DAVIS, P.A.**

By:___/s/_ Robert H. Jessup
 Robert H. Jessup (State Bar No. 42945)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorney for Plaintiff*